FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2010 JUN 29 P 3: 40

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| BANK OF AMERICA, N.A.<br>101 North Tryon Street<br>Charlotte, North Carolina 28255<br><br>        Plaintiff,<br><br>v.<br><br>CHRISTOPHER ANDREW SANDS<br>1105 Arboroak Place<br>Herndon, Virginia 20170<br><br>and<br><br>JAMES STEPHEN BRITT<br>1795 Brookside Lane<br>Vienna, Virginia 22182<br><br>        Defendants. | Civil Action No.: 1:10cv731<br>CMH/TRJ |

## COMPLAINT FOR FRAUD AND CONSPIRACY TO COMMIT FRAUD

Plaintiff Bank of America, N.A. ("Bank of America"), files this Complaint against Defendants Christopher Andrew Sands and James Stephen Britt and in support thereof states as follows:

### I.
### Parties, Jurisdiction and Venue

1. Plaintiff Bank of America is a national banking association with its principal place of business at 100 North Tryon Street, Charlotte, North Carolina 28255. As such, Bank of America is a citizen of the State of North Carolina.

2.      Defendant Christopher Andrew Sands is an individual who resides at 1105 Arboroak Place, Herndon, Virginia 20170. Mr. Sands was formerly an owner and Chief Executive Officer of AC Technology, Inc.

3.      Defendant James Stephen Britt is an individual who resides at 1795 Brookside Lane, Vienna, Virginia 22182. Mr. Britt is a current owner of AC Technolgy, Inc., having participated in the acquisition of the company from, among others, Defendant Christopher Sands.

4.      AC Technology, Inc. is a corporation organized under the laws of the Commonwealth of Virginia whose principal place of business is 22695 Commerce Center Court, Dulles, Virginia 20166.

5.      Earle D. Munns, Jr. is an individual who lives and resides at 11660 Great Falls Way, Great Falls, Virginia 22066. Mr. Munns is the Chief Executive Officer of AC Technology and owns 52.5% of the shares of AC Technology. Mr. Munns is a participant to the events that give rise to this litigation, but is not a named defendant.

6.      Michael Andrew Byrd is an individual who lives and resides at 2201 Darnell Court, Bowie, Maryland 20721. Mr. Byrd was formerly the Executive Vice President and 42.5% shareholder of AC Technology. Mr. Byrd is a participant to the events that give rise to this litigation, but is not a named defendant.

7.      The amount in controversy in this proceeding, exclusive of interest and costs, exceeds the sum of $75,000.

8.      Jurisdiction and venue are proper in this Court pursuant to the terms of 28 U.S.C. § 1332(a) and 28 U.S.C. § 1391.

170503

## II.

## Factual Background and General Allegations

9. The allegations in this Complaint relate to Defendants' unlawful activities, in concert with Earle Munns and Michael Byrd, to secure financing from the Plaintiff for the purpose of purchasing AC Technology, Inc.

10. Defendant James Stephen Britt is an attorney licensed and currently practicing in the State of Virginia. Mr. Britt, on behalf of himself and Messrs. Munns and Byrd, negotiated and entered into a Purchase and Sale Agreement for the purchase of AC Technology from Defendant Christopher Sands and his brother Arthur Joseph Sands, Jr.

11. The negotiated purchase price for AC Technology, Inc. was $5.5 million dollars. The funding for the acquisition came from a loan provided by Plaintiff Bank of America, N.A.

12. In order to obtain the loan from the Plaintiff, Messrs. Munns and Byrd entered into a Credit and Security Agreement dated June 30, 2008, (the "Credit Agreement") pursuant to which Bank of America made available to them and AC Technology a revolving line of credit (the "Line of Credit") in the maximum available amount of Fifteen Million Dollars ($15,000,000).

13. The Line of Credit is evidenced by a Revolving Loan Note (the "Note") dated June 30, 2008 from AC Technology and made payable to the order of Bank of America in the face amount of $25,000,000.

14. Messrs. Munns and Byrd each provided a Continuing and Unconditional Guaranty dated June 30, 2008 providing the Plaintiff with a guaranty of the prompt repayment of all AC Technology's indebtedness to Bank of America.

15. The Credit Agreement, Note, and Guaranties (hereafter jointly referred to as the "Financing Documents") were all reviewed and negotiated by Defendant Britt in his capacity as both buyer of AC Technology, and counsel to Munns and Byrd.

16. The Credit Agreement made clear, and the Parties understood, that the amount of the loan under the Financing Documents was based upon the financial information, and in particular the accounts receivable ("A/R") information, from AC Technology as relayed to the Bank via a document referred to as a Borrowing Base Certificate ("BBC"). The BBC not only served as the foundation for determining the loan amount AC Technology was eligible to receive under the Financing Documents, but the delivery of the BBC was also an explicit condition precedent to issuance of the loan.

17. The BBC was to reflect eligible accounts receivable as explicitly defined by the Credit Agreement and contained a certification verifying the information contained therein and acknowledging the Bank's reliance upon the information.

18. On Friday, June 27, 2008, at 7:43 p.m., Mr. Munns and Mr. Byrd received an e-mail from Defendant Christopher Sands with an A/R report purportedly generated as of 6:00 p.m. that evening, indicating that AC Technology's accounts receivable as of June 27, 2008, were $4,896,514.65. Included within that A/R report was a purported receivable from the Maryland Procurement Office in the amount of $2,007,460.66.

19. Defendant Sands knew because he was informed by Munns and Byrd, that the information he was supplying regarding AC Technology's A/R was to be used to complete the BBC needed to obtain the loan from the Plaintiff. Defendant also understood, because he was told by Munns and Byrd, that the larger the A/R, the more the parties could borrow from the Plaintiff.

20. On Friday, June 27, 2008, at 10:34 p.m., less than three hours after receiving AC Technology's A/R information from Defendant Sands, Michael Byrd transmitted, via e-mail, the Buyers' first BBC to Bank of America. This e-mail transmission was also sent to Defendant Britt.

21. According to this BBC, and despite contrary information received earlier in the day from Defendant Sands, Mr. Byrd certified to the Bank that AC Technology had eligible accounts receivable of $9,477,691.98. Mr. Byrd also sent to the Bank what he referred to as "the latest A/R Aging," which including the "receivable" from the Maryland Procurement Office.

22. On Sunday, June 29, 2008, at 11:19 a.m., the day before closing on the loan, Earle Munns re-transmitted this initial BBC with the "A/R Aging" summary to Bank of America and Defendant Britt. Mr. Munns, Michael Byrd and Defendant Britt "carefully reviewed" the BBC before its transmission to the Bank.

23. Based on the A/R information contained in this initial BBC, the Plaintiff issued a $5.5 million dollar loan from the Line of Credit that was used by Munns, Byrd and Defendant Britt to purchase AC Technology from Defendant Sands and his brother. A loan amount of less than $5.5 million dollars would not have been sufficient to complete the purchase of AC Technology from Defendant Sands and his brother.

24. Shortly after the acquisition, however, AC Technology defaulted under the Credit Agreement by failing to maintain the necessary Total Funded Debt to EBITDA ratio below 2.75 to 1.0 (the "Covenant Default"). Bank of America notified AC Technology of the Covenant Default and reserved its rights by letter dated December 17, 2008.

25. On February 18, 2009, AC Technology, Munns and Byrd entered into a Loan Modification Agreement with the Bank pursuant to which AC Technology, Munns and Byrd

acknowledged their default under the Financing Documents and the amount of the outstanding debt.

26. Pursuant to the Loan Modification Agreement, the Bank agreed to forbear taking action provided that Munns and Byrd obtained a capital infusion of $1,250,000 and make a principal payment of $250,000 on or before March 20, 2009.

27. Munns and Byrd failed to meet their obligations and defaulted under the Loan Modification Agreement by failing to make a capital infusion of $1,250,000 or a principal payment of $250,000 on or before March 20, 2009.

28. A default under the Loan Modification Agreement is an Event of Default under the Financing Documents (including the Credit Agreement) and entitles Bank of America to pursue all its remedies against the borrowers. Among these remedies is the right to declare the principal amount of the outstanding loan, together with accrued and unpaid interest thereon, and all other obligations then outstanding to be immediately due and payable. Bank of America asserted these rights pursuant to a Notice of Enforcement of Rights and Remedies dated March 30, 2009. At the time of default, the outstanding balance on the loan was $ 5,132,074.81.

29. After the default under the Loan Modification Agreement, the Plaintiff became aware that central facts upon which it reasonably relied to issue the $5.5 million dollar loan were false. Among other things, the Plaintiff became aware that 1) the A/R information contained within the initial BBC was materially false; and 2) despite the explicit and unambiguous prohibition contained within the Credit Agreement, the borrowers had, prior to the closing on the loan, encumbered AC Technology's collateral that was specifically and solely designated as security for the loan from the Plaintiff.

30. The falsity of the A/R information contained within the initial BBC was confirmed by both the Bank's forensic accountant, Todd Feuerman, who was provided unrestricted access to AC Technology's books and records, and Michael Byrd, AC Technology's former owner and Executive Vice President. Specifically, Messrs. Feuerman and Byrd have confirmed that, among other entries, the purported $2,007,460 account receivable entry for the Maryland Procurement Office (information supplied by Defendant Sands and carefully reviewed by Munns, Byrd, and Defendant Britt) in the June BBC was a fictitious receivable.

31. According to the Bank's expert, AC Technology's books and records indicated that the actual amount of receivables that should have been recorded on the June BBC was $2,828,866 (of which only $2,508,722 were "eligible" receivables) rather than the $9,649,923 transmitted to the Bank.

32. As a result of the over-inflated BBC, the borrowers received a loan amount that was $3,242,150 in excess of what they should have been eligible to receive. By falsifying the A/R information in the BBC, Munns, Byrd and Defendant Britt were able to complete the purchase of AC Technology and pay, from the proceeds of the Bank's loan, $5.5 million dollars to Defendant Sands and his brother.

33. In addition, the Credit Agreement that had been negotiated by Defendant Britt on behalf of himself and Messrs. Munns and Byrd, explicitly stated that all assets, including all accounts receivable, served as collateral for the Bank's loan.

34. Defendant Britt, and Messrs. Munns and Byrd understood that they were prohibited under the terms of the Credit Agreement from encumbering any of AC Tech's assets without the Bank's knowledge and permission, and, by their execution of the Financing

Documents had warranted to the Bank that there were no encumbrances (not otherwise identified in the Credit Agreement) to the Bank's collateral.

35. Despite the prohibition on encumbering AC Technology's assets, Mr. Munns, with the assistance of Defendants Britt and Sands, and through a shell entity created for the purpose of purchasing AC Technology, entered into a "credit facility" with a third party, Arrow Electronics, Inc. (hereafter "Arrow"), prior to closing on the loan with the Bank, and provided personal guarantees to Arrow on June 27, 2008, and June 30, 2008, as further security for payment.

36. The Bank was not informed about these pre-closing encumbrances but instead became aware of their existence only through discovery in subsequent litigation with Munns, Byrd and AC Technology.

37. Subsequent to closing on the Bank's loan, Munns and Byrd, with the knowledge of Defendant Britt, further encumbered AC Tech's assets with a Security Agreement with Arrow (the "Arrow Security Agreement").

### Count I
### (Fraudulent Misrepresentation against Defendants)

38. Bank of America incorporates by reference herein all of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

39. Defendants Christopher Andrew Sands and James Stephen Britt have repeatedly made false representations in connection with AC Technology's Line of Credit that they knew or had reason to expect would be communicated to and relied upon by the Plaintiff.

8

170503

40. The false representations made by Defendants involved facts material to the application, establishment, and administration of the Line of Credit, as well as the collateral security for the Line of Credit.

41. The false representations made by Defendants were at all times made intentionally and knowingly.

42. The false representations made by Defendants were intended to mislead Bank of America.

43. Bank of America at all times reasonably relied upon the false representations made by Defendants.

44. As a result of the false representations made by Defendants, Bank of America has suffered damages.

WHEREFORE, Plaintiff Bank of America, N.A. hereby demands the entry of an order entering judgment in favor of Bank of America, N.A. and against the Defendants Christopher Andrew Sands and James Stephen Britt, jointly and severally, in the amount of $5,132,074.81, plus pre and post-judgment interest, costs and attorneys' fees, punitive damages, and for such other and further relief as this Court deems just and equitable.

### Count II
### (Constructive Fraud against Defendants)

45. Bank of America incorporates by reference herein all of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

46. Defendants Christopher Andrew Sands and James Stephen Britt have repeatedly made false representations in connection with AC Technology's Line of Credit that they knew or had reason to expect would be communicated to and relied upon by the Plaintiff.

47. The representations made by Defendants involved facts material to the application, establishment, and administration of the Line of Credit, as well as the collateral security for the Line of Credit.

48. In the event Defendants did not intentionally mislead Bank of America, then their verbal and written representations were made with reckless abandon and disregard for truth.

49. The false representations made by Defendants were intended to mislead Bank of America.

50. Bank of America at all times reasonably relied upon the false representations made by Defendants.

51. As a result of the false representations made by, Bank of America has suffered damages.

WHEREFORE, Plaintiff Bank of America, N.A. hereby demands the entry of an order entering judgment in favor of Bank of America, N.A. and against the Defendants Christopher Andrew Sands and James Stephen Britt, jointly and severally, in the amount of $5,132,074.81, plus pre and post-judgment interest, costs and attorneys' fees, punitive damages, and for such other and further relief as this Court deems just and equitable.

### Count III
### (Common Law Conspiracy to Commit Fraud against Defendants)

52. Bank of America incorporates by reference herein all of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

53. Defendants, and Messrs. Munns and Byrd, understood that the BBC was to serve as the foundation upon which the Bank would determine the amount of the loan.

170503

54. The Defendants along with Munns and Byrd understood that the A/R information contained within the BBC had to be sufficiently high to warrant the issuance of the $5.5 million dollars needed to complete the sale of AC Technology.

55. Defendants, in concert with each other and with Earle D. Munns, Jr. and Michael Andrew Byrd, participated in a scheme to present false information regarding the A/R of AC Technology to Bank of America in connection with AC Tech's Line of Credit for the purpose of inducing the Bank to issue a loan greater than was otherwise warranted.

56. In addition, Defendants Britt and Sands, in concert with Mr. Munns, participated in a scheme to encumber the Bank's collateral before closing on the loan in violation of the explicit covenants and warranties contained with the Credit Agreement.

57. These false representations involved facts material to the application, establishment, and administration of the Line of Credit, as well as the collateral security for the Line of Credit.

58. The false representations made by Defendants and Messrs. Munns and Byrd to Bank of America were at all times made intentionally and knowingly, and were intended to mislead Bank of America.

59. Bank of America at all times reasonably relied upon these false representations, and, as a result, has suffered damages.

WHEREFORE, Plaintiff Bank of America, N.A. hereby demands the entry of an order entering judgment in favor of Bank of America, N.A. and against the Defendants Christopher Andrew Sands and James Stephen Britt, jointly and severally, in the amount of $5,132,074.81, plus pre and post-judgment interest, costs and attorneys' fees, punitive damages, and for such other and further relief as this Court deems just and equitable.

### Count IV
### (Statutory Conspiracy (Sections 18.2-499 and 18.2-500)
### to Commit Fraud against Defendants)

60.     Bank of America incorporates by reference herein all of the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

61.     Defendants and Messrs. Munns and Byrd understood that the BBC was to serve as the foundation upon which the Bank would determine the amount of the loan.

62.     The Defendants along with Munns and Byrd understood that the A/R information contained within the BBC had to be sufficiently high to warrant the issuance of the $5.5 million dollars needed to complete the sale and acquisition of AC Technology.

63.     Defendants, in concert with each other and with Earle D. Munns, Jr. and Michael Andrew Byrd, participated in a scheme to present false information regarding the A/R of AC Technology to Bank of America in connection with AC Tech's Line of Credit for the purpose of inducing the Bank to issue a loan greater than was otherwise warranted.

64.     In addition, Defendants Britt and Sands, along with Mr. Munns, participated in a scheme to encumber the Bank's collateral before closing on the loan in violation of the explicit covenants and warranties contained with the Credit Agreement.

65.     These false representations involved facts material to the application, establishment, and administration of the Line of Credit, as well as the collateral security for the Line of Credit.

66.     The false representations made by Defendants and Messrs. Munns and Byrd to Bank of America were at all times made intentionally and knowingly, and were intended to mislead Bank of America.

12

170503

67.     Bank of America at all times reasonably relied upon these false representations, and, as a result, has suffered damages.

WHEREFORE, Plaintiff Bank of America, N.A. hereby demands the entry of an order entering judgment in favor of Bank of America, N.A. and against the Defendants, Christopher Andrew Sands and James Stephen Britt, jointly and severally, in the amount of $5,132,074.81, plus pre and post-judgment interest, costs and attorneys' fees, punitive and treble damages, and for such other and further relief as this Court deems just and equitable.

Respectfully submitted,

/s/ Nikolaus F. Schandlbauer

Nikolaus F. Schandlbauer
(Admission pending *pro hac vice*)
E. John Steren
(Admission pending *pro hac vice*)
Michael A. Hass (Virginia Bar No. 74974)
Ober, Kaler, Grimes & Shriver
A Professional Corporation
1401 H Street, N.W., Suite 500
Washington, D.C. 20005-3324
(202) 408-8400
(202) 408-0640 Facsimile

**Attorneys for Plaintiff,**
Bank of America, N.A.